PEOPLE v PEREZ

Docket No. 236117. Submitted March 12, 2003, at Grand Rapids. Decided March 18, 2003, at 9:05 A.M. Leave to appeal sought.

Angel L. Perez, Sr., was convicted by a jury in the Branch Circuit Court, Michael H. Cherry, J., of second-degree criminal sexual conduct. He was sentenced to eight to fifteen years in prison. The conviction occurred in a second trial after the defendant's original convictions of four counts of second-degree criminal sexual conduct were reversed by the Court of Appeals and the matter was remanded for a new trial. The defendant appealed.

The Court of Appeals *held*:

1. The 180-day rule in MCL 780.131 and MCR 6.004(D) does not apply in this case. The defendant's status was that of a pretrial detainee between the time the Court of Appeals reversed the defendant's original convictions and remanded for a new trial and the start of the second trial. The statute and the court rule do not apply to pretrial detainees.

2. The trial court did not abuse its discretion in allowing the prosecution to strike an endorsed witness and in refusing to provide the missing-witness jury instruction, CJI2d 5.12, requested by the defendant. The instruction is no longer viable following the amendment of the res gestae rule, MCL 767.40a, to abolish the prosecution's obligation to produce res gestae witnesses at trial.

3. The evidence supports the trial court's scoring of the offense variables. The sentence was proportionate.

Affirmed.

CRIMINAL LAW — JURY INSTRUCTIONS — MISSING WITNESSES.

The missing-witness jury instruction, CJI2d 5.12, does not remain a viable instruction where it provides that a jury may infer that the testimony of a missing prosecution witness would have been unfavorable to the prosecution's case; following the Legislature's abolishment in 1986 of the rule that the prosecution is obligated to produce at trial res gestae witnesses, the prosecution is no longer responsible for the appearance of any particular witness (MCL 767.40a).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Kirk A. Kashian*, Prosecuting Attorney, and *J. Ronald Kaplansky*, Assistant Attorney General, for the people.

*Ronald D. Ambrose* for the defendant.

Before: SCHUETTE, P.J., and SAWYER and WILDER, JJ.

SAWYER, J. Defendant was convicted, following a jury trial, of second-degree criminal sexual conduct (CSC-II). MCL 750.520c. He was sentenced to a term of eight to fifteen years in prison. He now appeals, and we affirm.

Defendant was originally charged with four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, but was convicted of four counts of second-degree criminal sexual conduct. This Court reversed his convictions and ordered a new trial. *People v Perez*, unpublished opinion per curiam, issued February 18, 2000 (Docket No. 214190). On retrial, defendant was convicted on only one of the four counts of second-degree criminal sexual conduct.

Defendant first argues that the trial court lost jurisdiction over this case when the prosecutor failed to make a good-faith effort to bring defendant to trial within 180 days of this Court's February 18, 2000, decision reversing defendant's convictions as required by MCL 780.131 and MCR 6.004(D). We disagree.[1]

MCL 780.131(1) provides that an inmate of a correctional facility must be brought to trial within 180 days after the Department of Corrections notifies the

---

[1] We note that the period should actually be measured from April 3, 2000, the date this Court returned the lower-court record to the trial court, thus giving jurisdiction back to the trial court. MCR 7.215(F)(1)(b).

prosecutor of the inmate's place of imprisonment and delivers to the prosecutor a request for final disposition of the charge. This statute is further implemented by MCR 6.004(D), which provides that the prosecutor must make a good-faith effort to bring a prisoner to trial within 180 days of either the prosecutor's learning that the defendant is incarcerated in a state prison or in a local facility awaiting incarceration in a state prison, or from the date the Department of Corrections learns that a charge is pending against a prisoner.

The flaw in defendant's argument is that the statute and court rule only apply to individuals within the custody of the Department of Corrections. Following this Court's reversal of defendant's convictions following the first trial, defendant was no longer serving a sentence under the jurisdiction of the Department of Corrections.[2] Although it is not entirely clear from the record before us what defendant's custody status was following the reversal of his initial convictions,[3]

---

[2] Defendant's presentence report confirms that, at least as of the time of sentencing in the case at bar following the second trial, defendant had never been convicted of any other crime other than that involved in this case. Therefore, there would be no reason for defendant to be under the jurisdiction of the Department of Corrections other than in connection with this case.

[3] The lower-court file indicates that, on April 14, 2000, the trial court entered an order directing that defendant be transferred to the Branch County jail and held on a $50,000 bond. However, the file also contains a Writ of Habeas Corpus issued on October 6, 2000, directing the Department of Corrections to deliver defendant to the Branch Circuit Court for trial on October 9 and 10. The October trial never occurred, apparently because of the prosecutor's failure to produce the defendant at trial. The trial court then entered an order providing for defendant's release on personal recognizance. The lower-court file also contains a letter from the circuit-court administrator to the Muskegon Correctional Facility, dated October 10, transmitting a copy of the bond order and acknowledging a telephone conversation that indicated defendant had been released from custody and would return to Muskegon at a later date to retrieve his

it is irrelevant. In *People v Chambers*, 439 Mich 111, 116; 479 NW2d 346 (1992), the Court held that, even where a defendant physically remains in a Department of Corrections facility following the reversal of his convictions rather than being transferred to the county jail as expected, his status is that of a pretrial detainee and the 180-day rule does not apply to him. The same situation exists here: once this Court reversed defendant's convictions, regardless whether he was physically in the county jail or a state prison, his status was that of a pretrial detainee and the 180-day rule does not apply.[4]

Defendant next argues that the trial court erred in allowing the prosecutor to strike an endorsed witness, Dr. Dy. Defendant further argues that the trial court erred in refusing defendant's request for the missing-witness jury instruction, CJI2d 5.12. First, with respect to allowing the deletion of Dr. Dy from the prosecution's witness list, we review that decision for an abuse of discretion. *People v Burwick*, 450 Mich 281, 291; 537 NW2d 813 (1995). The prosecutor informed defendant a week or so before trial that he would not be calling Dr. Dy as a witness at trial.[5]

---

belongings (suggesting that defendant had remained in the physical custody of the Department of Corrections until being transported to Branch County in October 2000 to stand trial).

[4] The prosecutor suggests that, because the 180-day rule does not apply to defendant, defendant's argument should be reviewed under a general right-to-a-speedy-trial analysis. However, defendant does not make a general speedy-trial argument and, therefore, we decline to review it as such.

[5] Dr. Dy, who had performed a medical examination on the victim, was not called as a witness at the first trial. Before the second trial, the prosecutor moved to endorse her as a witness. An earlier trial date was adjourned at the prosecutor's request because Dr. Dy was out of the country. The prosecutor was still unable to procure Dr. Dy to testify because she was in the Philippines, but elected to proceed without her. The prosecutor did offer to defendant to request a second adjournment if defen-

When defendant raised the issue during the discussion of which jury instructions would be given, the prosecutor explained that Dr. Dy was still unavailable as a witness, that she had been subpoenaed, but the prosecutor could not produce her at trial.

Furthermore, it does not appear that Dr. Dy would have provided any testimony helpful to defendant. Dr. Dy would have testified that her examination of the victim indicated that she had been sexually penetrated. At trial, defendant argued that had Dr. Dy testified, defendant could have established that the victim had, in fact, been penetrated by other individuals and the prosecution was abandoning Dr. Dy as a witness because they would not want the victim's sexual history to come out on cross-examination. However, defendant has not established, in either the trial court or this Court, how Dr. Dy's testimony would have opened up the issue of the victim's sexual history under the rape shield rule. MRE 404(a)(3).

In sum, defendant was informed in advance of trial that the witness was not available to testify, yet did not request an adjournment until the witness returned, defendant has offered no argument regarding how the prosecutor was to force the witness to return to the United States from a foreign country, and defendant has not made any showing of any evidence that would conceivably have been useful to defendant. Accordingly, we are not persuaded that the trial court erred in allowing the witness to be struck.

---

dant wanted to wait until Dr. Dy was available to testify. Defendant did not accept the offer of an adjournment.

With respect to defendant's request for the missing-witness jury instruction, CJI2d 5.12, we are not persuaded that the trial court erred in refusing to give the instruction. CJI2d 5.12 reads as follows:

> _____ is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case.

The "Use Note" reads as follows:

> It is unclear what impact the 1986 amendments to the res gestae rule will have on this instruction. See commentary.
>
> In the CJI Committee's best judgment, the instruction is now an available remedy if the judge finds that: (1) the prosecution failed without good cause to produce at trial a designated trial witness, MCLA 767.40a(3), MSA 28.980(1)(3); (2) the prosecution failed to provide reasonable assistance to the defense in locating and serving an identified witness, MCLA 767.40a(5), MSA 28.980(1)(5); or (3) the prosecution failed to exercise due diligence in discovering and disclosing the identity of a res gestae witness, MCLA 767.40a(2), MSA 28.980(1)(2).

In light of the Supreme Court's decision in *Burwick, supra,* and this Court's decision in *People v Paquette,* 214 Mich App 336; 543 NW2d 342 (1995), we do not believe that CJI2d 5.12 remains a viable instruction.

In *Paquette, supra* at 343-344, we held as follows:

> Defendant next argues that the prosecutor failed to exercise due diligence in securing the presence of two res gestae witnesses, Craig Sandles and Christine Turner. We disagree. A prosecutor's duty with respect to res gestae witnesses is only to list such witnesses known at the time of the filing of the information and those that become known before trial. There is no longer any duty to endorse or produce such witnesses. MCL 767.40a; MSA 28.980(1); *People v*

*Burwick,* 450 Mich 281, 288-289; 537 NW2d 813 (1995). The trial court did not err in determining that the prosecutor had no further obligation beyond that which he had already done in this case to secure the presence of Sandles and Turner at trial.

The Supreme Court in *Burwick, supra* at 289, discussed the effect of the 1986 amendments of MCL 767.40a:

> The Legislature has thus eliminated the prosecutor's burden to locate, endorse, and produce unknown persons who might be res gestae witnesses and has addressed defense concerns to require the prosecution to give initial and continuing notice of all known res gestae witnesses, identify witnesses the prosecutor intends to produce, and provide law enforcement assistance to investigate and produce witnesses the defense requests.

*Burwick* goes on to note that the prosecutor may amend its witness list at any time upon good cause shown and it is the defendant's burden to determine which witnesses he wants produced at trial, and that there is no due-diligence requirement to allow a change in the prosecutor's witness list. *Burwick, supra* at 292.

Clearly in light of *Burwick,* the third reason given by the CJI Committee for the instruction, the prosecutor's failure to exercise due diligence to identify a res gestae witness, is no longer appropriate. However, it is the first reason given, the prosecutor's failure without good cause to produce a listed witness, that is at issue here. Requiring the missing-witness instruction in this situation is in contradiction to our conclusion in *Paquette, supra,* that the prosecutor no longer has a duty to produce a witness. Indeed, nowhere in the statute does the Legislature impose a burden on

the prosecutor to produce a witness. Rather, MCL 767.40a(1) and (2) impose a duty to disclose all known res gestae witnesses. Subsections 40a(3) and (4) require the prosecutor to disclose its witness list thirty days in advance of trial, changing that list only for good cause shown or by stipulation. Subsection 40a(5) requires the prosecutor and the police to provide the defendant with assistance "to locate and serve process upon a witness" at the defendant's request. Notably, it does not impose a duty to actually produce such witness.

Moreover, no obligation is imposed upon the prosecutor by MCL 767.40a beyond subpoenaing witnesses, either the prosecution's own or those requested by the defendant. Under subsections 40a(3) and (4), the prosecutor may not excuse a witness from honoring the subpoena without leave of the court. That is, the defendant may rely on the appearance of a witness on the prosecutor's witness list without further need to subpoena that witness himself. However, the statute imposes no particular penalty on the prosecutor for a witness's failure to honor a subpoena. Accordingly, we see no justification for an instruction that states that a missing witness would have testified favorably to the defendant. Such a rule would make as much sense as instructing the jury that a witness subpoenaed by the defendant who fails to appear would have testified favorably to the prosecutor.

In short, in 1986 the Legislature abolished the antiquated rule that the prosecutor was obligated to produce at trial res gestae witnesses. *Burwick, supra* at 289. Thus, the prosecutor is no longer, as CJI2d 5.12 suggests, responsible for the appearance of any par-

ticular witness. Therefore, it is a misstatement of the law to say that the prosecutor was responsible and that the witness would have been unfavorable to the prosecutor. Rather, the situation should be treated like any other failure of a subpoenaed witness to appear.

As for the second reason given by the CJI Committee, that situation is not involved in the case at bar. Accordingly, we need not address it and merely note that much the same analysis applies as above.

For the above reasons, we conclude that the trial court did not err in declining to give the instruction.

Finally, defendant argues that the trial court erred in scoring the sentencing guidelines, in departing from the guidelines' recommendation, and that the sentence imposed was disproportionate. We disagree.

Turning first to the scoring issue, because the instant offense occurred before January 1, 1999, the judicial sentencing guidelines, rather than the legislative sentencing guidelines, apply. MCL 769.34(1). At sentencing, defendant challenged the scoring of Offense Variables 7, 12, 13, and 25. On appeal, defendant limits his challenges to OV 12 (Criminal Sexual Penetrations) and OV 25 (Contemporaneous Criminal Acts). Defendant was scored fifty points for OV 12 and fifteen points for OV 25. Defendant had a total Offense Variable score of eighty-five, which placed him at Offense Severity Level IV, which is reached at the fifty-point mark.

We turn first to consideration of whether OV 12 was properly scored. Fifty points is appropriate where there are two or more sexual penetrations. Defendant argues that because he was acquitted of CSC-I at the original trial, the jury concluded that no penetrations

occurred. Defendant further argues that because he was convicted of only one count of CSC-II at the second trial, the jury rejected that more than one act occurred. The trial court rejected defendant's argument, noting that the court had listened to the testimony at both trials and concluded that multiple penetrations occurred. Contrary to defendant's argument, the scoring of the guidelines need not be consistent with the jury verdict, as explained in *People v Ratkov (After Remand)*, 201 Mich App 123, 125-126; 505 NW2d 886 (1993):

> Defendant's main claim on appeal is that the sentencing court erred in considering information presented at trial that was either not specifically "found" by the jury or that appears inconsistent with the jury's verdict. However, before addressing each of defendant's claimed scoring errors, we note there exists no requirement that a factfinder find the facts that form the basis of the scoring of the guidelines when rendering its verdict. *People v Williams*, 191 Mich App 269; 477 NW2d 877 (1991). A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial. *People v Harris*, 190 Mich App 652; 476 NW2d 767 (1991); *People v Walker*, 428 Mich 261; 407 NW2d 367 (1987). The contents of the presentence report are presumptively accurate if unchallenged by the defendant. However, once a defendant has effectively challenged an adverse factual assertion contained in the presentence report or any other controverted issues of fact relevant to the sentencing decision, the prosecution must prove by a preponderance of the evidence that the facts are as asserted. *Walker, supra*. If the record provides insufficient evidence upon which to base the decision supporting or opposing the scoring, the court in its discretion may order the presentment of further proofs. This Court will affirm a sentencing court's scoring decision where there is

evidence existing to support the score. *People v Warner*, 190 Mich App 26; 475 NW2d 397 (1991).

Because the prosecution must prove controverted factual assertions underlying the scoring of the sentencing guidelines by a preponderance of the evidence rather than beyond a reasonable doubt, situations may arise wherein although the factfinder declined to find a fact proven beyond a reasonable doubt for purposes of conviction, the same fact may be found by a preponderance of the evidence for purposes of sentencing. *Harris, supra; People v Purcell,* 174 Mich App 126; 435 NW2d 782 (1989).

In *Ratkov*, the situation was similar to the case at bar: the defendant was charged with CSC-I, but convicted of CSI-II, and the trial court scored the guidelines as if penetration had occurred. The *Ratkov* Court concluded that the victim's testimony at trial provided sufficient support for the scoring of OV 12 as if penetration had occurred, even though the jury only convicted the defendant of CSC-II. *Id.* at 126.

Similarly in the case at bar, the victim testified that there were multiple penetrations. The trial court obviously found the victim's testimony to be credible. Therefore, there existed evidence to support the score and we shall affirm the scoring. *Id.*

The same analysis applies to defendant's challenge to OV 25,[6] though we note that the issue is moot in light of our resolution of defendant's challenge to OV 12. That is, even if we were to agree that zero points should be given for OV 25, defendant would remain at Offense Severity Level IV.

Turning to the issue of proportionality, the sentence imposed did depart from the guidelines' recommendation of a minimum sentence in the range of

---

[6] In fact, the same challenge was made and rejected in *Ratkov, supra.*

twenty-four to sixty months. However, as the Supreme Court noted in *People v Lemons*, 454 Mich 234, 260; 562 NW2d 447 (1997), the key test of proportionality is not whether the sentence adheres to the guidelines' range, but whether it reflects the seriousness of the offense. Although the trial court's comments regarding the reasons for its sentence, which did depart from the guidelines' recommendation, were brief, the trial court did explain at the original sentencing in a little more detail.[7] The trial court explained that it did not believe that the guidelines adequately dealt with the repeated nature of the assaults in this case, the trauma to the victim, as well as the disparity in age and the relationship between defendant and the victim.

After reviewing the facts of this case, taking into account both the severity of this offense and the fact that this represents defendant's first conviction, we are satisfied that the sentence imposed was proportionate.

Affirmed.

---

[7] We note that defendant's original sentence of a minimum of 117 months was 21 months longer than the minimum imposed at sentencing following the second trial.