# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 15, 2018

Plaintiff-Appellee,

v

No. 333279
Macomb Circuit Court
LC No. 2015-003263-FC

CLINTON WILLIE BROOKS,

Defendant-Appellant.

Before: TALBOT, C.J., and METER and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). The trial court sentenced defendant to a prison term of 120 to 180 months. We affirm defendant's conviction, but vacate his sentence and remand for resentencing.[1]

Defendant was convicted of sexually abusing his niece, MH, who was nine years old at the time of trial. The abuse allegedly occurred while the family lived in Shelby Township, between September 2013 and February 2014, when defendant would watch MH and her brothers while their mother was at work. MH described an occasion when defendant touched her in her vaginal area, over her clothing, while she was on the living-room couch. According to MH, later that same day, as she was partially asleep on the couch, she discovered that her pants and underwear had been pulled down, and that defendant had placed his finger in her buttocks.

Defendant was also accused of sexually abusing MH's cousin, AB, who was 11 years old at the time of trial. Both girls described the abuse during interviews at Care House. After the interviews, AB recanted her allegations, and charges against defendant related to AB were dismissed. At trial, AB testified that her initial allegations against defendant were not true and

---

[1] Defendant was charged as a second-offense habitual offender, MCL 769.10. Although the Sentencing Information Report indicates that defendant was assigned a guidelines range that was enhanced for his being a second-offense habitual offender, the judgment of sentence does not reflect defendant's habitual-offender status. If defendant is sentenced as an habitual offender on resentencing, the trial court shall denote that status in the judgment of sentence.

that she made them only because MH asked her to do so. The prosecution's theory at trial was that both girls initially told the truth and that family members pressured AB into recanting her allegations to protect defendant, her uncle. Defendant testified at trial and denied the allegations. The defense theory at trial was that MH fabricated the allegations after an argument between her and defendant. Several family members testified at trial and impugned MH's honesty.

## I. CLOSURE OF THE COURTROOM

Defendant first argues that the trial court erred when it closed the courtroom during MH's testimony. Defendant argues that the closure violated MCL 600.2163a and his constitutional right to a public trial. Although defendant generally preserved these claims by objecting at trial, he did not argue below that the prosecutor failed to comply with the notice requirement of MCL 600.2163a, or raise an objection based on the availability of closed-circuit television to view MH's testimony outside the courtroom. Accordingly, those aspects of this issue are unpreserved.

Questions of constitutional law are reviewed de novo. *People v Vaughn*, 491 Mich 642, 650; 821 NW2d 288 (2012). Issues regarding the interpretation of statutes are also reviewed de novo. *People v Rose*, 289 Mich App 499, 505; 808 NW2d 301 (2010). An unpreserved claim of error is reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *Id*. at 763; *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

The prosecutor requested that the courtroom be closed during MH's testimony due to the sensitive nature of the charges and MH's young age, and because MH's allegations had caused significant conflict in MH's extended family, with some family members supporting MH and others siding with AB, who had recanted her allegations against defendant. In addition, before MH testified, the trial court was informed that she was suffering from physical ailments and nervousness from testifying, and might require frequent breaks.

The Michigan Constitution and the Sixth Amendment of the United States Constitution both guarantee a criminal defendant the right to a public trial. US Const, Ams VI and XIV; Const 1963, art 1, § 20. See *Vaughn*, 491 Mich at 650. However, the right is not absolute. In *Vaughn*, 491 Mich at 653, the Michigan Supreme Court explained:

> A defendant's Sixth Amendment right to a public trial is limited, and there are circumstances that allow the closure of a courtroom during any stage of a criminal proceeding, even over a defendant's objection:
>
> > [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.
>
> If there is a timely assertion of the Sixth Amendment public trial right, the remedy for a violation must be "appropriate to the violation," although "the defendant

should not be required to prove specific prejudice in order to obtain relief . . . ." [Quotation marks and citations omitted.]

MCR 8.116(D) provides:

(1) Except as otherwise provided by statute or court rule, a court may not limit access by the public to a court proceeding unless

(a) a party has filed a written motion that identifies the specific interest to be protected, or the court *sua sponte* has identified a specific interest to be protected, and the court determines that the interest outweighs the right of access;

(b) the denial of access is narrowly tailored to accommodate the interest to be protected, and there is no less restrictive means to adequately and effectively protect the interest; and

(c) the court states on the record the specific reasons for the decision to limit access to the proceeding.

It is undisputed that the prosecutor did not file a written motion to close the courtroom during MH's testimony. However, defendant cannot show that he was surprised by the trial request because the prosecutor moved to close the courtroom when MH testified at the preliminary examination, and defense counsel did not object to closing the courtroom at that time.

The trial court's closure of the courtroom was narrowly tailored to the reasons for the request—to protect MH's welfare—because it was limited to only MH's testimony. MH was a nine-year-old child witness, the allegations involved a sensitive matter, and the allegations had caused a significant rift in MH's extended family. The court's ruling was intended to protect MH's welfare and prevent other family members from attempting to intimidate MH or influence her testimony. Because of MH's young age, the sensitive nature of the accusations, and the family conflict that had already resulted, there were legitimate reasons for believing that safeguards were necessary to protect MH's welfare and to prevent her testimony from being influenced by the presence of other members of MH's extended family. MH's emotional welfare and preserving the sanctity of her testimony were overriding interests that justified closing the courtroom during her testimony. The trial court's closure decision was tailored to these circumstances, and there was no less restrictive means for allowing MH to feel secure while testifying, free from the distraction of other family members who held antagonistic opinions about her accusations. Defendant has not shown that the trial court's ruling violated his constitutional right to a public trial.

The trial court's decision was also based on MCL 600.2163a(16) and (17), which provide, in relevant part:

(16) If upon the motion of a party made before trial the court finds on the record that the special arrangements specified in subsection (17) are necessary to protect the welfare of the witness, the court shall order those special

-3-

arrangements. In determining whether it is necessary to protect the welfare of the witness, the court shall consider all of the following:

> (a) The age of the witness.

> (b) The nature of the offense or offenses.

> (c) The desire of the witness or the witness's family or guardian to have the testimony taken in a room closed to the public.

> (d) The physical condition of the witness.

> (17) If the court determines on the record that it is necessary to protect the welfare of the witness and grants the motion made under subsection (16), the court shall order 1 or more of the following:

> (a) All persons not necessary to the proceeding shall be excluded during the witness's testimony from the courtroom where the trial is held. The witness's testimony shall be broadcast by closed-circuit television to the public in another location out of sight of the witness.

MCL 600.2163a(1)(e)(*i*) defines "witness" to include a person under the age of 16 years who is an alleged victim of criminal sexual conduct. See also MCL 600.2163a(2)(a).

The record shows that MH was nine years old and experiencing both physical ailments and nervousness about testifying. These factors, as well as the sensitive nature of the case, supported closing the courtroom. The record also shows that the case had caused significant family discord, with family members taking opposing sides, led by defendant's mother and sister, who aligned themselves with defendant, and MH's mother, who supported MH. The record discloses that defendant visibly reacted emotionally during MH's testimony, to the point that the trial court had to warn him to maintain his composure or risk being removed from the courtroom. Considering the conflicting positions of different family members, the trial court was justified in finding that the presence of other family members in the courtroom during MH's testimony was likely to cause further disruptions that would impact MH's testimony and welfare.

Defendant argues that the family rift was not a proper reason for closing the courtroom. But MCL 600.2163a(16) requires the court to consider whether closure is necessary to protect the welfare of the witness and, while the statute list four factors for the court to consider, it does not foreclose the court from considering other relevant factors. Moreover, given the family strife that MH's accusations had caused and her reported nervousness, it was reasonable for the court to believe that closure of the courtroom, to enable MH to testify without the distraction caused by the presence of family members holding antagonistic opinions about her accusations, was necessary to protect MH's welfare.

Defendant complains that the prosecutor waited until after trial started to request closure of the courtroom. MCL 600.2163a(16) provides that a request to close the courtroom should be made by motion before trial. However, because defendant did not object to the closure on this basis at trial, he is not entitled to appellate relief unless he demonstrates a plain error affecting

his substantial rights. Even if defendant could demonstrate a plain error, he has not explained how he was prejudiced by the lack of notice. The courtroom was closed when MH testified at the preliminary examination and defendant did not object to the procedure then. Defendant has not otherwise explained how failure to comply with the notice requirement of MCL 600.2163a(16) affected his substantial rights.

Defendant also argues that there is nothing in the record to show that MH's testimony was broadcast by closed-circuit television for public viewing, outside the witness's sight. MCL 600.2163a(17)(a) provides that if the courtroom is closed, "[t]he witness's testimony shall be broadcast by closed-circuit television to the public in another location out of sight of the witness." The record indicates that the trial court did direct staff to shut down monitors during MH's testimony, but it is not clear from the existing record that the public was not able to view MH's testimony on any monitors. Defense counsel sought clarification that MH's testimony would still be recorded for the record and the trial court confirmed that it would. But counsel did not raise any objection that monitors for public viewing were not available, rendering this portion of the issue unpreserved. Because the record does not clearly indicate that the public was unable to view MH's testimony on any monitors, defendant has not established a clear or obvious error. *Jones*, 468 Mich at 355.

## II. DISCOVERY

Defendant next argues that he was denied a fair trial by the prosecutor's failure to produce before trial a copy of a recorded telephone call between defendant and defendant's sister, ER, who was called as a defense witness. During the prosecutor's cross-examination of ER, who was AB's mother, the prosecutor used portions of the recorded call to impeach ER's testimony regarding whether she believed AB's allegations against defendant. Defendant objected to the use of the recording because a copy had never been provided to the defense. After listening to the contents of the recording, defendant further argued that the recording contained exculpatory information because it indicated that family members had questioned MH about her allegations at a family meeting and she denied the allegations. The trial court agreed that the recording should have been provided to defense counsel before trial, but allowed the prosecutor to use portions of the recording during her cross-examination of ER. As a remedy for the discovery violation, however, the court allowed defendant to recall MH and other witnesses to question them about the potentially exculpatory information that MH had denied the allegations at a family meeting.

MCR 6.201(B)(1) requires the prosecution, upon request, to provide the defendant with any exculpatory information or evidence. The prosecution bears responsibility for evidence within its control, even where the nondisclosure was inadvertent and unintentional. See, generally, *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). When a party fails to comply with discovery, a court has broad discretion to fashion an appropriate remedy for the violation. MCR 6.201(J). "When determining an appropriate remedy for a discovery violation, 'the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances . . . .' " *People v Jackson*, 292 Mich App 583, 591; 808 NW2d 541 (2011) (citation omitted). We review the remedy imposed for a discovery violation for an abuse of discretion. MCR 6.201(J).

The significance of the recording was that it alluded to a family meeting at which MH had denied that defendant sexually abused her. Because the recording was not provided to the defense before trial, defense counsel was unable to cross-examine MH or other witnesses who were present at the family meeting to ask whether MH had denied the allegations. Initially, we note that because it was defendant who made the statement in the recorded call about MH having previously denied the alleged abuse at a family meeting, defendant should have known about this information regardless of his access to the recording. In any event, considering the nature of the evidence, the trial court fashioned an appropriate remedy when it allowed defendant to recall witnesses who were present at the family meeting to question them about MH's alleged denial of any abuse at that meeting.

Defendant argues that the trial court should have instead granted a mistrial due to the discovery violation. As noted, however, defendant should have been aware of the information because he was a participant in the conversation with his sister in which the information was discussed. Although defendant may not have known that the call was recorded, he had knowledge that MH had purportedly denied the allegations at a family meeting. Moreover, the remedy adopted by the trial court was tailored to address the nature of the violation and the significance of the evidence. Because of the violation, defense counsel was unable to previously question witnesses about MH's alleged denials at the family meeting. The trial court's remedy allowed defense counsel to elicit evidence that family members had questioned MH about the allegations at a family meeting, and it allowed defense counsel to recall MH and other family members who were present at the meeting to explore whether MH's statements at that meeting were inconsistent with her trial testimony. Considering the circumstances and the nature of the violation, the remedy adopted by the trial court was within the range of reasonable and principled outcomes.

Defendant asserts that the late production of the recording affected his trial strategy because defense counsel would not have called ER as a defense witness if counsel had known about the recorded call before trial. However, defendant did not make this argument below and he does not provide any explanation or rationale for why ER would not have been called, how the recorded call impacted the defense strategy, or how the strategy would have changed if counsel had known about the recording before trial. The recording suggested that ER initially thought there may be credence to the allegations when she confronted defendant about them in the recorded call. At trial, however, before defense counsel knew about the recording, ER admitted that she initially believed AB's allegations. Defense counsel had ER explain why she changed her opinion and came to conclude that the allegations made by AB, and by MH, were false. Defendant has not presented a persuasive argument that the trial strategy would have changed had the recording been provided before trial, such that a mistrial was required.

## III. PROSECUTOR'S CONDUCT

Next, defendant argues that he was deprived of a fair trial because of improper arguments by the prosecutor during closing and rebuttal arguments. Defendant did not object to the remarks

he challenges on appeal.[2]  Therefore, defendant's claims are unpreserved and our review "is limited to whether plain error affecting substantial rights occurred." *People v Abraham*, 256 Mich App 265, 274-275; 662 NW2d 836 (2003).  This Court will not reverse if the prejudicial effect of a prosecutor's comments could have been cured by a timely instruction upon request. *People v Joezell Williams II*, 265 Mich App 68, 70-71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006).

Defendant alternatively argues that defense counsel was ineffective for failing to object to the prosecutor's remarks.  To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied his right to a fair trial.  *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994).  To establish prejudice, defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *People v Johnnie Johnson, Jr*, 451 Mich 115, 124; 545 NW2d 637 (1996).

The test for prosecutorial misconduct is whether the defendant was denied a fair trial. See *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995).  Claims of prosecutorial misconduct are decided case by case and the challenged comments must be read in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996).  A prosecutor is afforded latitude in closing argument; although a prosecutor has a duty to see that a defendant receives a fair trial, she may use "hard language" when the evidence supports it and she is not required to phrase her arguments in the blandest of terms.  *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996).  "A prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but she is free to argue the evidence and any reasonable inferences that may arise from the evidence."  *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003).  However, the prosecutor must refrain from making prejudicial remarks.  *Bahoda*, 448 Mich at 283.  It is improper for a prosecutor to express personal knowledge or a personal belief regarding the credibility of a witness, or to vouch for the credibility of a witness by implying some special knowledge about the witness's truthfulness.  *Id*. at 276; *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011); *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).  But a prosecutor may comment on a witness's credibility and argue from the evidence that a witness is credible.  See *id*.

Defendant argues that it was improper for the prosecutor to argue that AB was pressured by her family to recant her allegations against defendant.  Although there was no direct evidence that AB was pressured to recant her allegations, the prosecutor's argument was based on reasonable inferences arising from AB's testimony and the circumstances surrounding her recantation.  The evidence established that AB initially claimed that defendant had sexually abused her, but then recanted her allegations after she was confronted.  The prosecutor relied on problems with AB's testimony, including her claimed inability to recall information, which

---

[2] Although defendant asserts that this issue was partially preserved by an objection that was addressed at a sidebar conference, the record discloses that the cited sidebar conference did not pertain to any of the statements that defendant challenges on appeal.

suggested that she had been coached. The prosecutor also observed that AB appeared to look at family members when she gave answers to questions. It was reasonable for the prosecutor to infer from the evidence that AB's recantation was at the behest of family members who wanted to protect defendant. The prosecutor's argument was not improper.

Defendant argues that the prosecutor improperly denigrated the defense by arguing that defense counsel's emphasis on inconsistencies or problems with MH's testimony were "red herrings" and labeling the defense attacks on MH's credibility as "craziness." A prosecutor may not denigrate defense counsel by suggesting that counsel is intentionally attempting to mislead the jury. *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). However, this Court has observed that referring to an argument by defense counsel as a "red herring" is not an improper denigration "of defense counsel, but rather a fair argument regarding what the jury should believe." *People v Blevins*, 314 Mich App 339, 356; 886 NW2d 456 (2016). Viewed in context, the prosecutor was merely pointing out that the defense attacks on MH's credibility involved only minor inconsistencies, which did not establish that the offenses did not occur or that her testimony was not credible. The remarks did not personally attack defense counsel and thus do not rise to the level of plain error.

Defendant argues that it was improper for the prosecutor to urge the jury not to believe him. Because defendant testified, the prosecutor was free to comment on his credibility. A prosecutor may argue from the facts that a witness, including the defendant, is not worthy of belief. *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997).

Defendant also argues that the prosecutor improperly vouched for MH's credibility by suggesting to the jury that "those aren't the kind of lies that little kids are making up." The prosecutor merely argued that MH's age and descriptions of defendant's abuse, which were both matters of evidence, were reasons the jury should give credence to her testimony. The prosecutor did not suggest that she had personal knowledge, unknown to the jury, that MH was telling the truth. *Meissner*, 294 Mich App at 456. Therefore, the prosecutor's remarks were not improper.

Defendant also argues that defense counsel was ineffective for not objecting to the prosecutor's arguments. But because the arguments were not improper, defense counsel was not ineffective for failing to object. "Defense counsel is not required to make a meritless motion or a futile objection." *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003).

IV. GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that MH's testimony was so inherently incredible that the jury's verdict finding him guilty of CSC-II was against the great weight of the evidence. Because defendant did not raise this issue in a motion for a new trial in the trial court, and this Court denied defendant's motion to remand regarding this issue, we review the issue for plain error

affecting the defendant's substantial rights. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011).[3]

In *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009), this Court stated:

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. *People v Plummer*, 229 Mich App 293, 306; 581 NW2d 753 (1998). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). Further, the resolution of credibility questions is within the exclusive province of the jury. *People v DeLisle*, 202 Mich App 658, 662; 509 NW2d 885 (1993).

In *Lemmon*, 456 Mich at 642, the Supreme Court explained that, absent extraordinary circumstances, issues of witness credibility are for the jury and the trial court may not substitute its view of the credibility of the evidence for the jury's determination. The Court stated:

> We reiterate the observation in *Anderson v Conterio*, 303 Mich 75, 79; 5 NW2d 572 (1942), that, when testimony is in direct conflict and testimony supporting the verdict has been impeached, if "it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it," the credibility of witnesses is for the jury.

> Adding flesh to what is a more refined articulation of the formula that " '[i]n general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial,' " *United States v Garcia*, 978 F2d 746, 748 (CA 1, 1992), quoting with approval *United States v Kuzniar*, 881 F2d 466, 470 (CA 7, 1989), federal circuit courts have carved out a very narrow exception to the rule that the trial court may not take the testimony away from the jury. *Id*. at 470-471. Defining the exception, the federal courts have developed several tests that would allow application of the exception; for example, if the "testimony contradicts indisputable physical facts or laws," *id*., "[w]here testimony is patently incredible or defies physical realities," *United States v Sanchez*, 969 F2d 1409, 1414 (CA 2, 1992), "[w]here a witness's testimony is material and is so inherently implausible that it could not be believed by a reasonable juror," *Garcia, supra* at 748, or where the witness' testimony has been

---

[3] Even if this issue were to be deemed preserved, we would find no basis for appellate relief.

seriously "impeached" and the case marked by "uncertainties and discrepancies." *United States v Martinez*, 763 F2d 1297, 1313 (CA 11, 1985).

This does not mean that "[a] judge's disagreement with the jury's verdict," *United States v Arrington*, 757 F2d 1484, 1486 (CA 4, 1985), or a "trial judge's rejection of all or part of the testimony of a witness or witnesses," entitles a defendant to a new trial. *Sanchez, supra* at 1414. Rather, a trial judge must determine if one of the tests applies so that it would seriously undermine the credibility of a witness' testimony and, if so, is there "a real concern that an innocent person may have been convicted" or that "it would be a manifest injustice" to allow the guilty verdict to stand. *Id*. If the "evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions," the judge may not disturb the jury findings although his judgment might incline him the other way. *Kringstad, supra* at 307.[4] Any "real concern" that an innocent person has been convicted would arise "only if the credible trial evidence weighs more heavily in [the defendant's] favor than against it." *Polin, supra* at 551.[5] [*Lemmon*, 456 Mich at 642-645 (footnotes omitted).]

Defendant argues that the jury's verdict is against the great weight of the evidence because MH's testimony was not credible. He cites to inconsistencies and problems with her testimony, her dislike of defendant as a motive to fabricate the allegations, and her exposure to television crime shows as a source for information on how to fabricate the details she provided. Although it was apparent that MH did not like defendant and did not want to be around him, this did not make her testimony inherently incredible. Defendant asserts that it was MH's mother who provided the timeline for the accusations, but MH's mother's testimony indicates that she only helped determine possible dates of the incidents based on MH's own descriptions of where the incidents occurred. Although MH delayed telling her parents about the abuse, she explained that she did not say anything sooner because she was scared of defendant. MH also explained that she did not cry when discussing the allegations at a family meeting because she had previously cried when she told her parents about the abuse, so she was more comfortable when discussing the allegations later.

Defendant's motion for a directed verdict at trial, made after the prosecution rested, was partially based on the same credibility arguments that defendant makes in this issue. In rejecting that argument, the trial court stated:

And what you are asking me to do is step into the place of the jury and make a determination as to the credibility of this young witness. I can make a determination, but that's not my function. I didn't find her testimony so outrageous or so -- so ludicrous that it could not or did not meet the standards and elements.

---

[4] *State v Kringstad*, 353 NW2d 302 (ND, 1984).

[5] *United States v Polin*, 824 F Supp 542 (ED Pa, 1993).

-10-

She testified quite clearly. She was quite decisive. In fact, I was quite impressed with the manner in which this child, at the age of nine, did testify.

I can't step into the jury's shoes and make an assessment on her credibility. I am finding, however, that there is enough evidence to go forward as presented through her testimony for this jury to decide. So your motion for directed verdict is denied.

These remarks apply with equal force to defendant's great-weight argument and demonstrate that the jury's decision to credit MH's testimony and find that defendant engaged in inappropriate sexual contact with her is not against the great weight of the evidence. Defendant has not shown that MH's testimony was so inherently implausible that it could not be believed by a reasonable juror.

## V. SENTENCING GUIDELINES

Defendant next argues that he is entitled to be resentenced because the trial court erred in scoring offense variable (OV) 11 and OV 13 of the sentencing guidelines. Defendant preserved these scoring challenges by objecting to the scoring of OV 11 at sentencing and by challenging the scoring of OV 13 in a motion to remand filed in this Court. We conclude that the trial court did not err in assessing 25 points for OV 11, but erred in assessing 10 points for OV 13, and that the scoring error entitles defendant to resentencing.

When reviewing a challenge to the scoring of the sentencing guidelines, this Court reviews the trial court's factual determinations, which must be supported by a preponderance of the evidence, for clear error. *People v Hardy,* 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

### A. OV 11

The trial court assessed 25 points for OV 11, which is the proper score when there is evidence of one criminal sexual penetration arising from the sentencing offense. MCL 777.41(1)(b). Defendant argues that OV 11 should not have been scored because he was convicted only of CSC-II, which involves sexual contact, and the jury acquitted him of CSC-I, the only offense involving penetration.

MCL 777.41 provides:

> (1) Offense variable 11 is criminal sexual penetration. Score offense variable 11 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

> (a) Two or more criminal sexual penetrations occurred ……..… 50 points

> (b) One criminal sexual penetration occurred ……………….... 25 points

(c) No criminal sexual penetration occurred ……………………….. 0 points

(2) All of the following apply to scoring offense variable 11:

(a) Score all sexual penetrations of the victim by the offender arising out of the sentencing offense.

(b) Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in offense variables 12 or 13.

(c) Do not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense.

The sentencing offense was CSC-II. Under MCL 777.41, the trial court was permitted to assess 25 points for OV 11 only if a preponderance of the evidence demonstrated the existence of a separate criminal sexual penetration that arose out of the CSC-II offense. According to MH's testimony, the offense of CSC II was committed when defendant touched her vaginal area, over her underwear, while she was in the living room with defendant early in the morning after her mother left for work. MH testified that later in the same day, when it was dark outside, she discovered that her clothing had been pulled down as she was sleeping on the couch in the living room, and then discovered that defendant had placed his finger in her buttocks.

Although the incidents occurred hours apart, they occurred on the same day, at the same location, and under similar circumstances, and involved the same victim. In *People v Johnson*, 474 Mich 96, 100; 712 NW2d 703 (2006), the Court explained that a penetration "arising out of the sentencing offense" within the meaning of OV 11 "means that the sexual penetration of the victim must result or spring from the sentencing offense." (Quotation marks and citation omitted.) The Court explained:

we have previously defined "arising out of" to suggest a causal connection between two events of a sort that is more than incidental. We continue to believe that this sets forth the most reasonable definition of "arising out of." Something that "aris[es] out of," or springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen. For present purposes, this requires that there be such a relationship between the penetrations at issue and the sentencing offenses. [*Id*. at 101.]

See also *People v Mutchie*, 251 Mich App 273, 277; 650 NW2d 733 (2002), aff'd 468 Mich 50 (2003).

Although MH testified that the incident involving sexual contact occurred early in the day and the incident involving sexual penetration occurred at night, both incidents involved the same victim and occurred on the same day, and both were committed in the living room of the house. Moreover, both offenses were committed while MH's mother was still at work, before MH had an opportunity to be free from defendant's control. These factors support the existence of a connective relationship between the two offenses. Indeed, the likelihood that defendant's commission of the earlier CSC-II offense prompted him to escalate his conduct when presented

with another opportunity to exploit the same victim under similar circumstances later that same day supports the existence of a connective relationship. Accordingly, the facts of this case support a causal connection between the CSC-II and CSC-I offenses. The mere fact that the two offenses were committed hours apart does not compel a different conclusion, because the strict timing of the acts is not alone dispositive under *Johnson*.

In addition, it was not improper for the trial court to rely on the facts concerning the CSC-I charge even though the jury acquitted defendant of that charge. A court may consider all evidence before it when scoring the guidelines, and scoring decisions need not be consistent with the jury's verdict, because controverted factual assertions underlying the scoring of the guidelines need only be proven by a preponderance of the evidence. *People v Perez*, 255 Mich App 703, 712-713; 662 NW2d 446 (2003), vacated in part on other grounds 469 Mich 415 (2003); see also *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). MH's testimony that defendant inserted his finger in her buttocks was sufficient to establish a criminal sexual penetration by a preponderance of the evidence.

For these reasons, the trial court did not err in assessing 25 points for OV 11.

## B. OV 13

Defendant also challenges the trial court's assessment of 10 points for OV 13, which concerns a continuing pattern of criminal behavior. MCL 777.43 As relevant to this case, MCL 777.43(1)(d) directs the trial court to assess 10 points if "[t]he offense was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property or a violation of section 7401(2)(a)(*i*) to (*iii*) or section 7403(2)(a)(*i*) to (*iii*) of the public health code, 1978 PA 368, MCL 333.7401 and 333.7403[.]"[6]

In addition to the sentencing offense, which was CSC-II, MH's testimony supported a finding that defendant committed a separate act of CSC-I. Although defendant was not convicted of CSC-I, when scoring OV 13, the court is required to consider "all crimes within a 5-year period, including the sentencing offense, . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). The record indicates that defendant also has a prior conviction for felonious assault from June 2009. Felonious assault is also a crime against a person. MCL 750.82; MCL 777.16d. The record indicates that the two CSC offenses were committed in or before February 2014; therefore, the felonious-assault conviction would fall within the five-year period preceding the sentencing offense. Thus, these offenses establish a pattern of three offenses against a person within a five-year period.

However, the instructions for OV 13 state that conduct used to score OV 11 may not also be used to score OV 13, except in circumstances not applicable here. MCL 777.43(2)(c). Because the trial court used the CSC-I offense to score OV 11, the court was not permitted to use that offense to also score OV 13. This leaves a pattern of just two offenses, namely, the

---

[6] Although defendant has a history of controlled-substance convictions, they do not involve offenses within the scope of MCL 777.43(1)(d).

sentencing offense (CSC-II) and felonious assault. Because a pattern of three offenses is necessary to assess 10 points for OV 13, and there are only two scorable offenses, the trial court erred in assessing 10 points for OV 13.

## C. REMEDY

A scoring error that affects a defendant's sentencing-guidelines range requires resentencing. *People v Francisco*, 474 Mich 82, 89-92; 711 NW2d 44 (2006). Defendant's total OV score was 55 points, placing him in OV Level V (50-74 points). A 10-point reduction will lower defendant's total OV score to 45 points, placing him in OV Level IV (35-49 points). The scoring change in turn reduces defendant's guidelines range from 50 to 100 months (or 50 to 125 months if enhanced because of defendant's habitual-offender status), to 43 to 86 months (or 43 to 107.5 months if enhanced because of defendant's habitual offender status). MCL 777.64. Because the scoring error affects the appropriate guidelines range, defendant is entitled to be resentenced. Accordingly, we vacate defendant's sentence and remand for resentencing.

## VI. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which require appellate relief.

## A. JUDICIAL BIAS

Defendant first argues that the trial judge was biased against because of her involvement in prior cases in which defendant was convicted of various drug offenses. A party must raise a claim of judicial bias before the trial court to preserve the issue for appellate review. *Jackson*, 292 Mich App at 597. Defendant did not raise this issue before the trial court. Because the issue is unpreserved, defendant has the burden of establishing a plain error affecting his substantial rights. *Id*.

A judge should be disqualified if she is biased or prejudiced against a party. MCR 2.003(C)(1)(a). A defendant must overcome a strong presumption of judicial impartiality to establish a successful claim of judicial bias. *People v Johnson*, 315 Mich App 163, 196; 889 NW2d 513 (2016). "Opinions formed by a judge on the basis of facts introduced or events occurring during the course of the current proceedings, or of prior proceedings, do not constitute bias or partiality unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Schellenberg v Rochester Elks*, 228 Mich App 20, 39; 577 NW2d 163 (1998).

Defendant previously appeared before the same trial judge in 2013 in connection with a series of drug charges. Those charges were resolved when defendant pleaded guilty to possession of analogues, MCL 333.7403(2)(b), two counts of possession of marijuana, MCL 333.7403(2)(d), and delivery or manufacture of marijuana, MCL 333.7401(2)(d).

Initially, we note that the judge's mere involvement in the prior cases does not support defendant's claim of judicial bias. A judge's involvement in prior proceedings involving the same defendant "does not amount to proof of bias for purposes of disqualification." *People v*

*Upshaw*, 172 Mich App 386, 388; 431 NW2d 520 (1988). Defendant relies on statements made by the judge in the earlier cases in 2013 to support his claim that the judge was biased against him. Those statements involved commentary on defendant's participation in the sale of drugs. Because defendant admitted engaging in such conduct when pleading guilty, the court's comments accusing defendant of selling drugs do not support defendant's claim that the judge was biased against him. Defendant has also failed to show that the judge's comments regarding his risk of committing new crimes, made when the court was considering bond and sentencing issues, were inappropriate, inasmuch as the risk of reoffending was an appropriate factor to consider when addressing those matters. Defendant has not overcome the strong presumption of judicial impartiality.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that trial counsel was ineffective for not adequately investigating the case and, in particular, not being prepared to challenge the credibility of MH's allegations against defendant. Because defendant did not raise these claims in a motion for a new trial or request for an evidentiary hearing in the trial court, and this Court denied defendant's motion for a remand, our review is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied his right to a fair trial. *Pickens*, 446 Mich at 338. The burden is on defendant to establish factual support for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

"A defendant is entitled to have his counsel investigate, prepare and assert all substantial defenses," *People v Hubbard*, 156 Mich App 712, 714; 402 NW2d 79 (1987), and the failure to conduct a reasonable investigation can constitute ineffective assistance of counsel, *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). To establish prejudice, a defendant must show that counsel's failure to interview a witness or conduct an adequate investigation resulted in counsel's ignorance of valuable evidence that would have substantially benefited the defendant. See *People v Caballero*, 184 Mich App 636, 642; 459 NW2d 80 (1990).

Defendant complains that defense counsel was ineffective for failing to obtain discovery materials related to MH's interview at Care House, and for not retaining an expert witness to assist with issues related to that interview. After defendant filed his claim of appeal, this Court granted defendant's motion to remand to enable defendant to obtain production of certain discovery materials related to the Care House interview. Although the court was informed that the interview had not been recorded, written notes of the interview were prepared and copies of those notes were provided to appellate counsel. Defendant and his appellate counsel have now had more than six months to review those notes to establish support for defendant's argument that counsel's failure to obtain the notes before trial deprived defendant of valuable evidence. Defendant has not explained how the Care House interview notes would have aided his defense at trial. Similarly, defendant has not explained how an expert could have used those notes in a manner favorable to defendant, nor has defendant provided an offer of proof from any expert witness to support his argument that an expert would have provided favorable testimony. Therefore, defendant has not met his burden of establishing factual support for his claim that

-15-

counsel's failure to obtain the notes before trial deprived him of the effective assistance of counsel.

Further, to the extent defendant argues that defense counsel otherwise failed to adequately investigate the case and was unprepared to challenge MH's credibility, the record does not support defendant's argument. The record discloses that defense counsel extensively cross-examined MH regarding her allegations and established inconsistencies between her trial testimony and prior statements, including her preliminary-examination testimony and prior statements to various family members. Counsel elicited that MH did not disclose the alleged sexual abuse until many months after it allegedly occurred, that MH denied the allegations when questioned by certain family members, that there were problems with MH's timeline of events, that MH inconsistently reported that the abuse involved vaginal penetration when she testified at trial that defendant only inserted his finger in her buttocks, and that MH made the allegations after a heated argument with defendant, which served as a motive to fabricate the allegations. Defense counsel also called witnesses to show that MH was vengeful and had a reputation for dishonesty, and that MH had enlisted AB's cooperation to falsely accuse defendant of sexual abuse. The record clearly establishes that defense counsel was familiar with the case and made reasonable efforts to attack the credibility of MH's allegations.

## C. RECORDING OF TELEPHONE CALL

In his final issue, defendant challenges the admissibility of the recorded telephone conversation between himself and his sister ER in AB's case. He argues that the recording was obtained illegally in violation of the Fourth Amendment and also constituted privileged information. Because defendant did not challenge the admissibility of the recording on these grounds below, these claims are unpreserved. Accordingly, appellate relief is foreclosed absent a plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

Defendant argues that the police illegally recorded the telephone conversation between ER and himself because they did not obtain a warrant to record the call and ER did not consent to having the call recorded. The record does not support this argument.

It is impermissible for the police to conduct electronic surveillance or record conversations between private persons without an order from a magistrate, but an exception to the order requirement exists where one party to the conversation consents to the interception of the conversation by the police or their agents, or the use of electronic equipment. *People v Patrick*, 46 Mich App 678, 682-683; 208 NW2d 604 (1973). This is known as "warrantless participant monitoring." See *People v Collins*, 438 Mich 8, 11; 475 NW2d 684 (1991).

At trial, the prosecutor cross-examined ER about the circumstances surrounding the recording of the telephone call between herself and defendant, resulting in the following exchange on the record:

> *Q* Okay. And then the officer suggested to you let's do this thing called the 'one-party consent call', do you remember that?
>
> *A* Yes.

*Q* Okay. And that means --- that meant that you had to go to the police station and they were going to record a call between you and the defendant; isn't that right?

*A* Okay. When I went to the police station, I didn't initially know that that was [sic] going to do.

*Q* Okay.

*A* I had to --- I had to set up something for him to come in and talk to my daughter. So that [sic] how we ended up at the police station.

*Q* Okay. So at some point you are at the police station, and then you talk about doing, maybe, this 'one-party consent call'?

*A* Yes. He asked me if I would consent to doing it.

*Q* Okay. And you did consent to do it, right?

*A* I did.

*Q* Yeah. And you actually called the defendant, right?

*A* Yes, I did.

*Q* And that was [sic] call was taped for thirtysomething minutes. There's --- does that sound about right?

*A* Yes.

ER's testimony at trial clearly establishes that she consented to having her telephone conversation with defendant recorded. Thus, there is no merit to defendant's claim that a court order was required because ER did not consent to having the call recorded. On appeal, defendant relies on a posttrial affidavit from ER to challenge the validity of her consent. However, the affidavit submitted by defendant is not signed by ER. Moreover, ER unequivocally testified at trial that she consented to the recorded telephone call and "a party or witness may not create a factual dispute by submitting an affidavit that contradicts his or her own sworn testimony or prior conduct." *People v Armisted*, 295 Mich App 32, 49; 811 NW2d 47 (2011). Defendant has also submitted his own signed affidavit in which he avers that ER did not voluntarily consent to the recording. We reject defendant's reliance on his own affidavit because defendant lacks personal knowledge about his sister's consent.

Defendant also seems to argue that his telephone conversation with ER was privileged because he had an agreement with her "to retain counsel and not to divulge the contents of our conversations." Defendant's apparent reliance on the attorney-client privilege to argue that the recorded telephone conversation was privileged information is misplaced. The attorney-client privilege attaches to confidential communications between a client and his legal advisor or agents for the purpose of obtaining legal advice. *Reed Dairy Farm v Consumers Power Co*, 227

Mich App 614, 618-619; 576 NW2d 709 (1998). Neither defendant nor ER are attorneys, and there is no evidence that they had retained counsel before the call was recorded. Moreover, defendant does not assert that ER was acting as an agent for any attorney. Accordingly, this argument lacks merit.

Defendant also asserts that he and ER had multiple telephone conversations, and the version played at trial was an edited version of several conversations. At trial, however, ER testified regarding just one call, which she agreed lasted approximately 30 minutes. Defendant has not established any factual support for his claim that multiple calls were recorded.

In sum, defendant has not established any plain error involving the admission of the recorded telephone call between himself and his sister, ER.

Defendant's conviction is affirmed, but we vacate his sentence and remand for resentencing. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Patrick M. Meter
/s/ Jonathan Tukel